IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER COTTLE, | : | |
|    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-5160 |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, *et al.*, | : | |
|    Defendants. | : | |

### MEMORANDUM

SÁNCHEZ, J.                                                                                                    OCTOBER 3, 2025

Pro se Plaintiff Christopher Cottle, a prisoner currently housed at SCI Mahanoy, brings claims against the Pennsylvania Department of Corrections ("DOC"), five current or former DOC employees,[1] and three John/Jane Doe Defendants arising out of his placement on a prolonged isolative status known as the "Restricted Release List." Cottle raises constitutional claims pursuant to 42 U.S.C. § 1983, claims under Title II of the Americans with Disabilities Act ("ADA"), and state law claims for negligence, conspiracy and intentional infliction of emotional distress, seeking monetary damages and injunctive relief.[2] Defendants have filed a partial motion to dismiss,

---

[1] The individually named Defendants are Laurel Harry, John Wetzel, George Little, Michael Wenerowicz, Lucas Malishchak.

[2] Cottle also seeks a declaration that his rights have been violated in the past. (ECF No. 1 ("Compl.") at 2, 21.) Declaratory relief is unavailable to adjudicate past conduct, so Cottle's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment

seeking dismissal of Cottle's constitutional claims for money damages against the DOC and the individually named Defendants in their official capacities.  They also seek dismissal of Cottle's ADA claims and state law claims for negligence and conspiracy.  The Court will grant the motion as to Cottle's claims for money damages against the DOC and the individually named Defendants in their official capacities, his ADA claims against the individual Defendants, his conspiracy claim, and his negligence claim except as to Defendant Malishchak.  The motion will be denied as to Cottle's negligence claim against Defendant Malishchak and as to Cottle's ADA claim against the DOC.

I. **FACTUAL ALLEGATIONS**[3]

Cottle alleges that he is currently housed under the DOC's "most severe administrative and isolative 'lock-down' status known as the Restricted Release List" (hereinafter "RRL").  (Compl. at 5.)  He asserts that he has been confined to the RRL for more than five years, and during this time, he has been subjected to "harsh; inhumane and unconstitutional conditions."  (*Id.* at 4-5.)  By filing suit, Cottle seeks redress and to "shine light" on a "long-standing conspiracy by D.O.C. officials and its mental health providers to undermine meaningful health care."  (*Id.* at 4.)

Cottle avers that RRL status is "alleged to be for those inmates who present a clear and present threat to the orderly operations of a facility," but has been misused by the DOC to "indefinitely confine <u>particular</u> inmates to harsh solitary conditions known to be detrimental to both mental and physical health over prolonged periods."  (*Id.* at 5.) (emphasis in original).  He

---

is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[3] The factual allegations set forth in this Memorandum are taken from Cottle's Complaint, which consists of twenty-one handwritten pages.  (ECF No. 1.)  The Court adopts the pagination supplied by the CM/ECF docketing system.  Grammar, spelling, and punctuation errors in quotes from Cottle's submissions are cleaned up where necessary.

alleges that there are "no definitive criteria" that need to be met for either "initiation or removal of RRL status," and even though RRL inmates are supposed to reviewed annually, the "annual review process" is "circumventive" and "perfunctory," resulting in "unexplained and unwarranted continuances for years." (*Id.* at 6.)

Cottle avers that inmates on the RRL are subject to harsher conditions of confinement than the general population. (*Id.* at 7.) For example, RRL inmates are allegedly denied contact visitation (Cottle alleges he has been denied physical contact for six years), the ability to marry, access to rehabilitative programming, exercise equipment, daily showers and adequate hygiene products, "meaningful interaction with staff and [other] inmates," and the "ability to retain all of their legal material" and visit the law library on a regular basis. (*Id.* at 7-10.) Cottle also avers that mental health treatment for RRL inmates is limited to "brief cell side visits by unlicensed psych staff" even though a policy provides that inmates "are supposed to meet with psych staff out of cell at least every 30 days." (*Id.* at 8.)

Cottle asserts that "[a]ll named defendants are well aware that an abundance of literature and psychiatric studies have found that prolonged segregation in solitary confinement has the potential to cause severe psychological harm," but they continue "to promote prolonged segregation to indefinite solitary confinement status such as RRL" while "ignoring their obligation to 'protect' in the interest of promoting health and safety." (*Id.* at 11.) Cottle contends that he has a history of mental illness that pre-dates his incarceration, yet he has not received any assistance from any DOC psychology or psychiatry personnel for his mental health disorders. (*Id.* at 12.) He avers that he has not been able to adjust to the "RRL status of prolonged confinement," which has resulted in "instances of self harm as well as suicide attempts[] [and] feeling the overwhelming need to escape his conditions." (*Id.* at 13.) He contends that Defendant Malishchak, who is

3

identified as the "Psychology director" for the DOC, aided Defendants Harry, Wetzel, Little, Wenerowicz, and John/Jane Does 1-3 in "circumventing [Cottle's] access to adequate mental health care; to justify his prolonged solitary confinement; while depriving him of the same level of care afforded to those confined to [general] population" who have the same or similar mental health symptoms. (*Id.* at 13-14.)

Based on these allegations, Cottle asserts constitutional claims of deliberate indifference and denial of adequate mental health care in violation of the Eighth Amendment and violations of his Fourteenth Amendment right to due process. (*Id.* at 15-16.) He also asserts violations of Title II of the ADA against all named Defendants and state law claims of negligence, conspiracy, and intentional infliction of emotional distress. (*Id.* at 17-19.)

The DOC, Harry, Wetzel, Little, Wenerowicz, and Malishchak filed a Partial Motion to Dismiss Cottle's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereinafter "Motion"). (ECF No. 26.) They seek dismissal of Cottle's constitutional claims for money damages against the DOC and the individually named Defendants in their official capacities pursuant to the Eleventh Amendment. They also seek dismissal of Cottle's ADA claims against all Defendants as well as his state law claims of negligence and conspiracy based on sovereign immunity grounds. Cottle has since filed a Response in Opposition to Defendants' Partial Motion to Dismiss (hereinafter "Response"). (ECF No. 31.)

## II. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

### III.  DISCUSSION

#### A.  Constitutional Claims Against the DOC and Official Capacity Claims

Cottle asserts constitutional claims pursuant to 42 U.S.C. § 1983.  He seeks money damages against the DOC and has named all other Defendants in their official and individual capacities.  (*See* Compl. at 4.)  However, official capacity claims are indistinguishable from claims against the entity that employs the officials, here, the DOC, s*ee Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), and the Eleventh Amendment bars suits against the Commonwealth of Pennsylvania and its agencies, including the DOC, that seek monetary damages, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth has not waived its Eleventh Amendment immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  Thus, suits against state officials acting in their official capacities are really suits against the employing government agency and, as such, are barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Moreover, the DOC is not considered a "person" for purposes of § 1983.  *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983.").  Accordingly,

6

Cottle's claims for money damages against the DOC, as well as his official capacity claims seeking money damages, will be dismissed with prejudice.[4]

### B.     ADA Claims

#### 1. Claims Against Individually Named Defendants

Cottle's ADA claims against the individually named Defendants, Harry, Wetzel, Wenerowicz, and Malishchak (*see* Compl. at 17), cannot proceed because Title II of the ADA does not provide for individual liability. *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *see also Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414-15 (3d Cir. 2011) (*per curiam*) (holding that plaintiff failed to state a viable ADA claim against any of the "non-entity defendants" that were sued in their individual capacities). The proper defendant for a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity, which here would be the DOC. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002). Accordingly, Cottle's ADA claims against the individual Defendants will be dismissed with prejudice.[5]

---

[4] Cottle concedes that the DOC "and the individually named Defendants are not allowed to be sued for damages in their official capacity." (*See* Response at 5.)

[5] Cottle does not dispute this conclusion. (*See* Response at 6.)

7

### 2. Claims Against the DOC

The ADA "require[s] public entities[] . . . to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). "Title II of the ADA applies to services, programs and activities provided within correctional institutions." *Chisolm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)). "To state a claim under [the ADA, a plaintiff] must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89 (footnote omitted). The plaintiff "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Id.* at 289. A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs', or, second, by alleging facts indicating that [he] could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal quotations and alterations omitted).

A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12101(2)(A). The DOC concedes, for the purposes of this Motion, that Cottle is a "qualified individual with a disability." (*See* Motion at 10.)

The DOC disputes, however, that Cottle "was denied benefits or programs, or that the purported denials were the result of his disability." *Id.* The DOC contends that Cottle's claims that he was "denied access to mental health and rehabilitative treatment" is a claim of medical malpractice and not a "denial of benefits" as required to state a claim under the ADA. (Motion at 10-11.) Citing *Cornish v City of Philadelphia*, No. 14-6920, 2015 WL 3387052 (E.D. Pa. May 26, 2015), the DOC argues that "delays in and denials of medical care in the prison setting do not give rise to ADA violations." *Id.* at 11. Cottle, however, has alleged more than delayed or incompetent treatment.

Cottle alleges that during the five years he has been on the RRL, he has been denied contact visitation with family and friends, "meaningful interaction with staff and [other] inmates," and access to rehabilitative programming. (Compl. at 7-10.) He asserts that his mental health treatment is limited to "brief cell side visits by unlicensed psych staff" even though prison policy requires inmates "to meet with psych staff out of cell at least every 30 days." (*Id.* at 8.) Cottle avers that has not been able to adjust to the "RRL status of prolonged confinement," and it has resulted in "instances of self-harm as well as suicide attempts." (*Id.* at 13.) He contends that he has been deprived of "the same level of care afforded to those confined to [general] population" who have the same or similar mental health symptoms. (*Id.* at 13-14.) At this stage of the case, Cottle has alleged plausibly that he was denied participation in a program, service, or activity.

Finally, the DOC asserts that Cottle cannot satisfy the third element because he alleges that his placement on the RRL resulted from his own negative behaviors, and that "is not the equivalent of a claim for discrimination *based upon* [Cottle's] alleged disabilities." (Motion at 12 (emphasis in original).) The United States Court of Appeals for the Third Circuit's decision in *Williams v. Sec'y Pennsylvania Dep't. of Corr.*, 117 F.4th 503 (3d Cir. Sept. 20, 2024), is instructive. When

9

considering whether an incarcerated person with a disability has suffered discrimination "by reason of his disability," the fact that a prisoner was deprived of an accommodation because his own misconduct caused him to be placed in a segregated housing unit does not relieve the DOC's obligation to comply with federal law. *Williams*, 117 F.4th at 528-29. The DOC has an obligation to make "reasonable modifications" to "policies, practices, or procedures" where modifications are necessary to avoid discrimination because of a disability. *Id.* at 529. Accordingly, taking Cottle's allegations as true, he has alleged plausibly that the DOC's failure to modify its practices to ameliorate the harms of prolonged solitary confinement on him may violate the ADA. Accordingly, Cottle will be permitted to proceed on his ADA claims against the DOC, and Defendants' Motion will be denied as to this claim.

### C. State Law Claims

Defendants move for dismissal of Cottle's state law claims for negligence and conspiracy. (Motion at 13-15.) By statute, Pennsylvania law provides agencies, officials and employees of the Commonwealth acting within the scope of their duties with sovereign immunity from damages claims, except in instances in which the immunity has been specifically waived. *See* 1 Pa. Cons. Stat. § 2310 (establishing immunity for Commonwealth officials and employees); 42 Pa. Cons. Stat. § 8521 (limiting waiver of immunity to specific exceptions); *id.* § 8522 (setting forth the limited exceptions); *see also Stackhouse v. Pa. State Police*, 892 A.2d 54, 58 (Pa. Commw. Ct. 2006) ("Generally, the Commonwealth and its agencies, officials and employees acting within the scope of their duties are immune from suits for damages."). Further, "a state officer is shielded from liability for intentional torts committed while acting within the scope of his duties." *Bracey v. Betancourt*, No. 20-6205, 2021 WL 5112246, at *7 (E.D. Pa. Nov. 3, 2021); *see also Poteat v. Lydon*, No. 22-2114, 2023 WL 6620368, at *3 (3d Cir. Oct. 11, 2023) (*per curiam*) ("State

sovereign immunity bars these suits against the Commonwealth and its employees acting within the scope of their duties, as the PSP employees were, and the limited negligence exceptions to sovereign immunity do not apply as Poteat alleged only intentional torts."); *Kidd v. Pennsylvania*, 37 F. App'x 588, 592 n.3 (3d Cir. 2002) (summarily dismissing intentional infliction of emotional distress claim because "[t]he Commonwealth, it subdivisions, and its employees acting within the scope of employment enjoy Eleventh Amendment immunity in federal court. The Pennsylvania legislature has not chosen to waive this immunity for intentional torts." (citation omitted)).

Cottle argues that sovereign immunity does not apply here because the Defendants "acted outside the scope of their employment" by placing him "in solitary confinement, knowing it to be harmful." (Response at 9.) This is legally incorrect. "Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct 'within the scope of employment.'" *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (quoting *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730 (Pa. Super. Ct. 1989)). "According to the Restatement, 'conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . .'" *Id.* (quoting Restatement (Second) Agency § 228) (alterations in original). "Under Pennsylvania law, even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business.'" *Id.* at 381 (quoting *Shuman Estate v. Weber*, 216 A.2d 169 (Pa. Super. Ct. 1980)).

The allegations of the Complaint reflect that Defendants were always acting as DOC employees. (Compl. at 3-4.) By Cottle's own allegations, Defendants were all working for the DOC, or at a DOC facility, "under color of state law" at the time and performing tasks that they would be expected to perform for the purpose of serving their employer. (*Id.*) Even if any of the

11

individual Defendants responded inappropriately as Cottle alleges, that would not equate to a conclusion that they did not act within the scope of their employment. *See, e.g.*, *Hill v. Barnacle*, 655 F. App'x 142, 148 (3d Cir. 2016) (*per curiam*) (agreeing "that defendants' only alleged actions — suspending Hill's visitation and mail privileges and confiscating her mail — were necessarily committed in the scope of their employment by the prison and are not among the types of conduct as to which the Commonwealth has waived sovereign immunity"); *Feliz v. Kintock Grp.*, 297 F. App'x 131, 137 (3d Cir. 2008) (*per curiam*) ("While Feliz may take issue with the manner in which they performed their duties, there can be no question that the Commonwealth defendants were acting within the scope of their employment in the instant case.").

Because Defendants were acting within the scope of their employment, Cottle's state law conspiracy claim will be dismissed with prejudice. *See Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 402 (W.D. Pa. 2014) (dismissing civil conspiracy claim against state troopers under sovereign immunity doctrine); *Cindrich v. Fisher,* 512 F. Supp. 2d 396, 399 (W.D. Pa. 2006) (noting that "immunity has been waived in only nine narrow areas [ ], none of which include claims for . . . civil conspiracy or intentional infliction of emotional distress"). Moreover, recognizing our screening obligations under section 1915(e)(2)(B)(ii), the Court will also dismiss Cottle's state law claims of intentional infliction of emotional distress. *See Woods v. Terra*, No. 23-2178, 2024 WL 5047853, at *8 (E.D. Pa. Dec. 9, 2024).

With respect to his state law claim of negligence, however, Cottle argues (*see* Response at 8) that the immunity statute provides an exception to sovereign immunity for medical-professional liability that is applicable to health care personnel. *See* 42 Pa. Cons. Stat. § 8522(b) (providing exception for "Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care

personnel." ); *see also Williams v. Syed*, 782 A.2d 1090 (Pa. Commw. Ct. 2001) (inmate failed to allege medical malpractice claim against prison superintendent). Construing the Complaint liberally, Defendant Malishchak, the "Director of Psychology" at the DOC (*see* Compl. at 4), may be a health care professional under the immunity statute, and the negligence/medical-professional liability claim against him will, therefore be served for a responsive pleading. (*But see* Pa. R. Civ. P. 1042.3 (requiring that a plaintiff file a Certificate of Merit that an "appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm").) Because Defendants Harry, Wetzel, Little, and Wenerowicz are not identified as medical professionals, any negligence claims against them may not proceed.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion in part and direct Defendants to file a responsive pleading in accordance with Federal Rule of Civil Procedure 12(a)(4) as to those claims that remain in Cottle's Complaint, including those claims for which Defendants did not seek dismissal.[6]

Defendants' Motion will be denied as to Cottle's ADA claim against the DOC and as to Cottle's state law claim of negligence against Defendant Malishchak only. Defendants' Motion will be granted as to the following claims: (1) Cottle's claims for money damages against the DOC and Harry, Wetzel, Little, Wenerowicz, and Malishchak in their official capacities; (2) Cottle's ADA claims against Harry, Wetzel, Little, Wenerowicz, and Malishchak; and (3) Cottle's

---

[6] Defendants did not seek dismissal of Cottle's Eighth Amendment claims of deliberate indifference (Count I), his Eighth Amendment claims of inadequate mental health care (Count II), or his Fourteenth Amendment due process violation claims (Count III).

13

state law conspiracy claims against all Defendants and his state law claims of negligence against Harry, Wetzel, Little, and Wenerowicz.  Finally, Cottle's claims seeking declaratory relief and his state law claims of intentional infliction of emotional distress will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Cottle will not be granted leave to amend, because any attempt at amendment in this action would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  An appropriate Order follows.

**BY THE COURT:**

    /s/ Juan R. Sánchez
**JUAN R. SÁNCHEZ, J.**